UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ISABEL SHEELEY,

        Plaintiff,

v.                                                    CASE NO. 3:10-cv-00231-J-34JBT

ADVANCED CHECK PROCESSING,

        Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Re-open Case ("Motion to Re-open") (Doc. 20), Defendant's Motion to Vacate Default Judgment ("Motion to Vacate") (Doc. 21) (collectively, "Motions"), and Plaintiff's Brief in Opposition to the Motions ("Opposition") (Doc. 27).  For the reasons stated herein, the Court recommends that the Motion to Re-open be granted and the Motion to Vacate be denied.

### I.    Background

On March 15, 2010, Plaintiff, Isabel Sheeley ("Sheeley"), filed her one-count Complaint against Defendant, Advanced Check Processing ("ACP"), alleging various

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Doc. 1.)  On April 19, 2010, Plaintiff served Defendant with the summons and Complaint.  (Doc. 4-1 at 2.)  On the same date, Chris McDonald, the owner of ACP, called Plaintiff's counsel, James Pacitti, to discuss the case.  (Doc. 27-1, ¶ 4.)

The Declaration of Peter Cozmyk, consulting attorney for Plaintiff, provides in relevant part:

> 5. I personally have spoken to Chris McDonald on at least two occasions.  Mr. McDonald claimed that he had proof that the allegations in the complaint did not occur.  I asked Mr. McDonald to send the documentation, and informed Mr. McDonald on the second phone call that simply saying that it isn't true is not enough and that we would be moving forward with Plaintiff's complaint, and again asked for the documentation Mr. McDonald claimed to have.
> 6. Our records indicate that the documents that Plaintiff requested from Defendant were never received.
> 7. On May 26, 2010, prior to filing Plaintiff's Motion for Default Judgment, I contacted Defendant via e-mail and informed him that the Clerk had entered default, and offered a chance to resolve the matter.
> . . .
> 8. Mr. McDonald responded and indicated he would retain counsel to defend him and indicated that he has proof and that he would fight for as long as needed.

(Doc. 27-1.)

On May 24, 2010, Plaintiff filed her Motion for Entry of Default and Declaration in Support Thereof.  (Doc. 5.)  The Motion certified that a copy thereof had been served upon Defendant via USPS.  (*Id.*)  Based on that Motion and Defendant's failure to file an answer or otherwise appear in this case, the Clerk of Court entered a default against Defendant on May 25, 2010.  (Doc. 6.)  On May 26, 2010, Mr.

Cozmyk contacted Mr. McDonald via e-mail, proposing a settlement and telling him to "keep in mind that [they] have failed to answer or respond to the lawsuit and the clerk has entered default against [them]." (Doc. 27-1, Ex. 1b.)

On June 8, 2010, Plaintiff filed her Motion for Default Judgment. (Doc. 7.) The Motion certified that a copy thereof had been served upon Defendant via USPS. (*Id.*) On July 1, 2010, the Court entered an Order, stating that "[a]lthough given adequate time to do so, Defendant ha[s] not responded to the Motion [for Default Judgment]." (Doc. 8.) In the Order, the Court allowed Defendant to respond to the Motion for Default Judgment by July 21, 2010. (*Id.*) The Order also stated that "the Court will treat the Motion as being unopposed" if Defendant fails to respond by that date. (*Id.*) The docket sheet reflects that a copy of the Order was mailed to Defendant's address.

On July 27, 2010, the Court referred the Motion for Default Judgment to the undersigned Magistrate Judge for a report and recommendation regarding an appropriate resolution thereof. (Doc. 10.) On August 4, 2010, the undersigned entered an Order, which provided that "[i]n reviewing Defendant's corporate status, it has come to the Court's attention that Plaintiff's Motion for Default Judgment (Doc. 7) was sent to Defendant's previous address." (Doc. 11.) Accordingly, the Order instructed Plaintiff to serve Defendant with the Motion for Default Judgment and the same Order at Defendant's new address by August 13, 2010, and directed Defendant to respond to the Motion for Default Judgment within fourteen days from

3

the date of service.  (*Id.*)  The Order warned Defendant that the Motion would be treated as unopposed if Defendant failed to respond.  (*Id.*)

On August 11, 2010, Plaintiff filed a Certificate of Service, which provided that Defendant was served with the Motion for Default Judgment and the Court's August 4, 2010 Order by mail at the new address.  (Doc. 12.)  Service of the same was also confirmed by Plaintiff's Notice of Service of Defendant, which stated that on August 17, 2010, a process server served Defendant "via substitute service on the Defendant's co-tenant."  (Doc. 13.)

On September 13, 2010, after noting that the Motion for Default Judgment would be treated as unopposed due to Defendant's failure to file a response thereto "despite being given several opportunities to do so," the undersigned entered a Report and Recommendation ("R&R"), recommending that the Motion for Default Judgment be granted in part and denied in part.  (Doc. 14.)  The docket sheet reflects that a copy of the R&R was mailed to Defendant's new address.

On November 4, 2010, after noting that no objections had been filed to the R&R and that the time for doing so had passed, and based upon an independent examination of the record and a *de novo* review of the legal conclusions, the Court entered an Order, adopting the R&R and granting in part and denying in part the Motion for Default Judgment.  (Doc. 15.)  On November 5, 2010, the Clerk of Court entered a Judgment in favor of Plaintiff and against Defendant for the sum of $3,253.61.  (Doc. 16.)

4

On December 28, 2010, a Notice of Appearance was filed by Christopher Hixson of the law firm of Lynch & Robbins PA on behalf of Defendant.  (Doc. 19.) On the same day, Defendant's counsel filed the two Motions that are presently before the Court.  (Docs. 20 & 21.)  On January 4, 2011, the Motions were referred to the undersigned for a report and recommendation regarding an appropriate resolution of the same.  (Doc. 24.)

## II.   Standard

### A.   Default

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause."  Fed. R. Civ. P. 55(c).  "'[G]ood cause' is not susceptible to a precise formula, but . . . [c]ourts have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense."  *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996).  Courts have also "examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default."  *Id.*  "Whatever factors are employed, the imperative is that they be regarded simply as a means of identifying circumstances which warrant the finding of 'good cause' to set aside a default."  *Id.*  "However, if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial

proceedings, the court need make no other findings in denying relief." *Id.* at 951-52.

### B.   Default Judgment

The court "may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). "The excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default." *EEOC v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

To prevail on a motion to set aside a default judgment, a defendant "must show (1) a meritorious defense, (2) lack of prejudice to the non-defaulting party, and (3) a good reason for failing to reply to the complaint." *Nat'l R.R. Passenger Corp. v. Patco Transp., Inc.*, 128 Fed. App'x 93, 94 (11th Cir. Apr. 19, 2005) (per curiam) (citing In re *Worldwide Web Sys., Inc. v. Feltman*, 328 F.3d 1291, 1295 (11th Cir. 2003)).

### III.   Analysis

In this case, the Court need go no further than to find that Defendant has exhibited reckless disregard for the judicial proceedings. Despite being given multiple opportunities to prevent the entry of a default judgment, Defendant recklessly neglected to do so. Although courts prefer that cases be decided on their

6

merits, *Theiss v. Giove Law Office, P.C.*, 2008 WL 2323911, *3 (M.D. Fla. June 5, 2008), to allow Defendant to set aside the default judgment would make a mockery of the prior Orders of this Court giving Defendant a number of opportunities to make an appearance in this case.  Moreover, the financial loss to Defendant is minimal as the judgment is for approximately $3,000.  Thus, the Court recommends that the Motion to Vacate be denied.

Defendant makes a number of arguments in support of the Motion to Vacate. (Doc. 21.)  First, Defendant asserts that it did not respond to the Complaint due to Defendant's understanding that Plaintiff would not go forward with the prosecution of the case while they were in communications.  (*Id.* at 3.)  Second, Defendant claims it has shown excusable neglect due to its inability to retain counsel as a result of financial difficulty.  (*Id.* at 4.)  Next, Defendant argues that Plaintiff would not be prejudiced since Defendant sought relief within thirty days of receiving notice of the Judgment.  (*Id.* at 5-6.)  Finally, Defendant claims it "has disclosed potential meritorious defenses such as ceasing to communicate with the debtor after receiving documentation and that the only male communication with the company would have to be through Chris McDonald of which he did not perform the alleged actions." (*Id.* at 6.)

The only documentation Defendant submits in support of its arguments is the Affidavit of Chris McDonald.  (Doc. 21-1.)  This Affidavit provides in relevant part:

4. I made numerous calls to the Plaintiff's counsel's office, prior to the

lawsuit and after the filing of it, and spoke with individuals asking questions and was always given the response that they would get back with me.

5. I, per the request of the Plaintiff's counsel, faxed over what documents I relied upon in my discussions with his office.

6. Based on those actions, I understood that no default would be requested while we were negotiating and working things out.

. . .

8. I attempted to hire counsel to defend this action but was unable to retain them at that time due to financial difficulty resulting from the time period being the "slow" period for collection agencies.

. . .

12. The filing of this Motion occurs on December 17, 2010 which is less than 30 days from the receipt of the Judgment in this matter.

. . .

14. I, in fact, closed this debtor's collection file and did not contact the Plaintiff further after she indicated she had already paid this debt.

(*Id.*)

The Court has considered Defendant's arguments and finds them unpersuasive. First, assuming that there was an understanding between the parties that Plaintiff would not proceed with the case prior to the filing of this lawsuit and even through the initial stages of the litigation, Defendant's failure to defend the lawsuit pursuant to such understanding became unreasonable after Plaintiff filed her Motion for Entry of Default, which was served on Defendant. Further, even though it is unclear whether a copy of the Clerk's Entry of Default was actually sent to Defendant, Plaintiff has shown proof that she informed Defendant of the Clerk's Entry of Default just a day after it was entered.

Moreover, even if Defendant continued to believe that Plaintiff would not proceed with the case as a result of the parties' communications, Defendant does

not explain why it ignored multiple Court Orders, which provided Defendant with several opportunities to defend this action and apprise the Court of its situation, including its financial difficulty. (*See* Docs. 8, 11, 14.) Moreover, in *Compania*, the Eleventh Circuit upheld the district court's rejection of a similar financial reason for setting aside a default. 88 F.3d at 952. Allowing Defendant to proceed on the merits after Plaintiff expended both time and resources in complying with the Court's Orders to serve Defendant and after the Court provided Defendant with multiple opportunities to be heard, "would weaken the integrity of the rules, which are to 'be construed to secure the just, speedy, and inexpensive determination of every action.'" *EEOC*, 896 F.2d at 529. Therefore, Defendant has not shown a good reason for failing to respond to the Complaint. *See Compania*, 88 F.3d at 952 (stating that "when a litigant has been given ample opportunity to comply with court orders but fails to effect any compliance, the result may be deemed willful").

Further, in *Compania*, the court stated that "if a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief." 88 F.3d at 951-52. Thus, this Court is not obligated to make any other findings. Even if Defendant has made a sufficient showing of a meritorious defense and lack of prejudice to Plaintiff, which the Court need not decide, those factors are outweighed in this case by the minimal financial loss to Defendant and its reckless disregard for the judicial proceedings.

Therefore, the Court will recommend that the Motion to Vacate be denied. To

the extent this case needs to be reopened so the Court can address the Motion to Vacate, the Court will recommend that the Motion to Re-open be granted. *Warren v. Pepin & Pearl, Inc.*, 2010 WL 4513424, *2 (M.D. Fla. Nov. 2, 2010) ("An administrative closure order does not bar a party from restoring the action to the Court's active calendar upon an appropriate application.").

Accordingly, it is respectfully **RECOMMENDED** that:

1.    The Motion to Re-open (**Doc. 20**) be **GRANTED**.

2.    The Motion to Vacate (**Doc. 21**) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, on February 10, 2011.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record